ROBERT ERNST, Appellant, *v.* DARIUS G. CROSBY, as Executor, etc., Respondent.

Where a lessor of premises knows or intends that they will or may be used for unlawful purposes the lease is void, and the obligation of the lessee to pay rent will not be enforced by the court.

Plaintiff purchased certain premises in New York city, subject to a lease to M., defendant's intestate. The premises had been, prior to, and were at the time of the execution of the lease, used for purposes of prostitution, of which fact the lessor had knowledge. Plaintiff had promised to execute a new lease to the occupants, but refused to give them a lease, and executed one to M. By the terms of the lease the house was to be "used as a dwelling house only," and it was provided that the lessee would "obey all lawful orders" of the departments of the city government. The occupants remained in possession and continued to use the premises for the same immoral purposes, and the lessor, plaintiff's grantor, collected the rent of them. Plaintiff bought in ignorance of the character of the occupation. *Held,* that the circumstances were such as to warrant a finding that plaintiff's grantor was party to a plan for continuing the unlawful use of the premises through the new lease, but in such wise as not to imperil its validity, and that the lease to M. was but a cover; that plaintiff had the opportunity to ascertain as to the use of the premises, and if he did not do so, or have resort to the rights given him by law, he was not entitled to an enforcement of the lease.

(Argued November 29, 1893; decided December 12, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 16, 1892, which affirmed a judgment in favor of defendant entered upon the report of a referee.

Said referee was appointed to hear and determine a claim for the rent of certain premises presented by plaintiff to the executors of John Mowatt, deceased, and rejected by them.

The facts, so far as material, are stated in the opinion.

*E. J. Spink* for appellant. This action is upon the covenants of a lease. To invalidate the lease or defeat the claim for rent, it must be shown to have been in its inception a letting for an unlawful purpose, and that the lessor was party to

such purpose. (*Michael* v. *Bacon,* 29 Miss. 474; *Zink* v. *Grant,* 25 Ohio St. 352; *Updike* v. *Campbell,* 4 E. D. Smith, 570; *Tracy* v. *Talmage,* 14 N. Y. 162; *Bowry* v. *Bennett,* 1 Camp. 348; *Trovinger* v. *McBurney,* 5 Cow. 253; *O'Brien* v. *Brietenbach,* 1 Hilt. 304; *Kneiss* v. *Seligman,* 5 How. Pr. 425.) A lease under seal imports a consideration lawful and sufficient. (Story on Cont. [5th ed.] § 543.) Unlawful intent of the lessor cannot be proved by inference from facts, unless they necessarily imply his knowledge and purpose at the time of making the lease. Mere knowledge of purpose of lessee is not enough. (*Gibson* v. *Pearsall,* 1 E. D. Smith, 90; *Trovinger* v. *McBurney,* 5 Cow. 253; *Bowry* v. *Bennett,* 1 Camp. 348.)

*Theo. H. Silkman* for respondent. The purpose for which the premises were used was *malum in se;* the question of knowledge and intention of the parties to the lease is, therefore, to be shown by their acts and conduct before and after the making of the lease, and the question whether knowledge and intent will be inferred from such acts and conduct is one to be determined by the jury or referee. (*Sherman* v. *Wilder,* 106 Mass. 537; *Updike* v. *Campbell,* 4 E. D. Smith, 570; *Edelmuth* v. *McGarren,* 4 Daly, 467; *Bunker* v. *People,* 37 Mich. 8; *Andrews* v. *People,* 60 Ill. 354; *Tracy* v. *Talmage,* 14 N. Y. 162.) The purpose being one forbidden by law, the lease was absolutely void and could not be made valid by assignment; neither does a covenant to use for innocent purposes save it. (McAdam on Landl. & Ten. § 76; Taylor on Landl & Ten. §§ 521, 644; *Smith* v. *White,* L. R. [1 Eq.] 626; *Sherman* v. *Wilder,* 106 Mass. 537; *Gas Light Co.* v. *Turner,* 5 Bing. [N. C.] 666; *Com.* v. *Harrington,* 3 Pick. 26; *Jennings* v. *Com.,* 17 id. 80; *Lowell* v. *B. & L. R. R.,* 23 id. 32.)

GRAY, J. As a defense to the claim for rent against the estate in his hands, the executor asserted the invalidity of the lease, for having been made by the lessor for an unlawful pur-

pose.  The evidence showed that the house had been used and
occupied by the Clarks for purposes of prostitution.  Mowatt,
the defendant's testator, had, probably, been the lessee of the
premises under a lease from the original owner, McGinn.  It
is true that the evidence does not absolutely show this; but it
is sufficient to justify the inference of the fact, and of the
further fact that Mowatt sustained close relations with the
Clarks.  McGinn sold to Morris, and the conveyance was made
subject to the lease of the premises, but without mentioning
the name of the lessee.  Morris, before his purchase, lived
near to, and frequented the house, and knew perfectly well
the nature of the use to which it was put by the Clarks.  The
existing lease was to expire a few days after the date fixed for
Morris to take title under his contract of purchase.  Mrs. Clark
testified that Morris had promised to give them a new lease,
and had negotiated with respect to it.  She went to his law-
yer's office, as she says, by his direction, for the purpose of
getting the new lease; but though one was drawn up at first to
her and her husband, it was subsequently destroyed.  Morris
refused to give the lease to them, and executed one to Mowatt;
which provided that the premises should be " used as a dwell-
ing house only," and that the lessee should " obey all lawful
orders of the health department and all other departments of
city government."  It does not appear affirmatively that Mor-
ris saw the lease existing at the time of his purchase, or knew
that Mowatt was the lessee therein.  There was abundant evi-
dence to show his familiarity with the leased premises, his rela-
tions with the tenants, and his knowledge concerning the
inmates of the house and its uses, and from his connection
with Flanagan, who formerly collected the rent for the lessee,
and from the testimony of his lawyer, it is difficult to resist
the inference that he knew enough about Mowatt.  After
owning the premises for some months, he sold them to the
plaintiff, subject to the lease; the Clarks remaining in posses-
sion, and continuing in their immoral practices.  The referee
found that the plaintiff bought in ignorance of the character
of the occupation; and it is insisted for him, that the lease,

being on its face for a lawful purpose, cannot be rendered void by mere inference from facts which do not conclusively show an unlawful purpose in Morris, the lessor, in making the lease to Mowatt. If the lessor of premises knows and intends that they will or may be used for unlawful purposes, the lease is void, and the obligations of the parties will receive no aid from the courts for their enforcement. In such a case, it is perfectly competent to show that knowledge and intent by circumstantial evidence; for, otherwise, it might be impossible to prove the immoral purposes which underlay an apparently innocent contract of the parties. All that is required is that the evidence adduced shall be fairly susceptible of the inference that the agreement was in furtherance of an unlawful purpose. In the present case, while the contract of lease, by its terms, restricted the use of the premises to an apparently lawful purpose, yet, if there was any competent evidence which showed, or which tended to show, that it was but a cover for their continued use by the Clarks in their immoral business, it would support the decision of the referee. The evidence was purely circumstantial; but the circumstances were such as warrant the belief that Morris, plaintiff's grantor, was a party to a plan for continuing the Clarks in their use of the premises, through a new lease; but in such wise as not to imperil its validity. Though it is not directly testified to that he had known his lessee, Mowatt, the facts tend strongly to show that Mowatt's name was used as a mere cover in the further letting of the house after Morris became its purchaser. It may be, because the character of Mrs. Clark was tainted, that her evidence was open to disbelief; but the referee was not bound to discredit her wholly. There were facts which tended to corroborate her evidence; in Morris' intimacy with her and her husband and with the inmates of their house and in his collecting the rent from the Clarks, notwithstanding his lease was to Mowatt. The intention with which a man enters into a transaction may be inferred from his acts. They may so characterize his purpose as to indelibly color the transaction, notwithstanding its innocent appearance. It is of no slight significance that

Morris was not called as a witness. It would have been very easy through his evidence to lessen, if not resolve, the doubt as to his purpose and as to his relations with Mowatt when this lease was made. The plaintiff, when he negotiated for the purchase and became the owner of the premises from Morris, had the opportunity to ascertain about the lease and the use by lessee, or tenants, and if he did not avail himself of them, or have resort to the rights which the law gave him, he cannot have relief from the courts under the covenants of a contract, which, by reason of its unlawful purpose, came under the ban of the law.

We see no material errors committed by the referee upon the trial, and we are satisfied that his conclusions had support in the evidence.

The judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.