*Stephenson,* 74 Mass. [8 Gray] 438; *People* v. *Harris,* 209 N. Y. 70.)

We shall not discuss the defendant's contention that the trial court coerced the jury into an agreement upon a verdict; neither do we decide whether there is any ground for it. The circumstances upon which it is predicated will, in all human probability, not be reproduced on another trial. With respect to the alleged error in the charge on the subject of reasonable doubt, our conclusion is that the charge in its entirety fairly presented the question to the jury. We desire once more to emphasize the observation that we have not attempted to discuss all the testimony bearing on the general issue of fact, and that we have purposely limited our review to the particular questions which in our judgment require the reversal of this judgment of conviction.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, HOGAN and CARDOZO, JJ., concur; CUDDEBACK, J., not voting.

Judgment of conviction reversed and new trial ordered.

---

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES KAYE, Appellant.

New York (city of) — authority of fire commissioner to require installation of automatic sprinklers in building — construction of provisions of charter giving commissioner such authority — conviction of property owner for a misdemeanor for refusing to obey such an order.

1. The Greater New York charter, in section 775, added thereto by chapter 899 of the Laws of 1911, provides that the fire commissioner may " Require, in writing, the installation, as prescribed by any law or ordinance, in any building, structure or inclosure of automatic or other fire alarm system or fire extinguishing equipment and the maintenance and repair thereof." Under such provision, read together with sections 762 and 773 of the charter (L. 1897, ch. 378; L. 1901, ch. 466, § 1620, subd. 3), the fire commissioner

has the authority to order the owner of premises, used for manu-
facturing purposes, to install therein a separate and distinct system
of automatic sprinklers, and if such owner refuses to obey such
order he may be convicted of a misdemeanor.

2. The fire commissioner being empowered to investigate and
determine the fact whether in any particular instance further fire
protection is required, the reasonableness of his determination is
open to review by the courts and the person aggrieved is entitled
to show that the order made by such fire commissioner was unrea-
sonable, unnecessary and oppressive. Furthermore, the statute
itself (L. 1911, ch. 899, §§ 776–777b) provides that the determination
of the commissioner, in any case, may be reviewed, *first*, by sur-
veyors, and, *secondly*, by the court on a writ of certiorari; and hence
such means of reviewing the order of the commissioner being avail-
able it cannot be held that the owner is deprived by such order of
his property without due process of law.

3. The question whether, in the particular case, the order of the
fire commissioner requiring the installation of automatic sprinklers
was reasonable or not was a question of fact, and where upon the
trial of the property owner for refusing to obey such order, many wit-
nesses were sworn by both parties as to the condition of the defend-
ant's premises and the reasonableness of the fire commissioner's
order that automatic sprinklers be installed thereon, and such ques-
tion has been decided against the defendant and that decision
unanimously affirmed by the Appellate Division, it cannot be
reviewed by the Court of Appeals, and the judgment convicting the
defendant of a misdemeanor for violating the order of the fire
commissioner should be affirmed.

*People* v. *Kaye*, 160 App. Div. 644, affirmed.

(Argued May 11, 1914; decided July 14, 1914.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
February 13, 1914, which affirmed a judgment of the
Court of Special Sessions in the city of New York con-
victing the defendant of a misdemeanor in failing to
comply with an order of the fire commissioner of the city
of New York.

The facts, so far as material, are stated in the opinion.

*Carlisle Norwood* for appellant. The rule or doctrine
of *ejusdem generis* must be applied in interpreting the

ordinance. (2 Lewis' Sutherland's Statutory Construction [2d ed.], § 422; *Matter of Robinson*, 203 N. Y. 380; *Burks* v. *Bosso*, 180 N. Y. 341; *People* v. *Richards*, 108 N. Y. 137; *People* v. *N. Y. & M. B. R. Co.*, 84 N. Y. 565; *Hermance* v. *Board of Supervisors*, 71 N. Y. 481; *Chegaray* v. *Mayor, etc., of New York*, 13 N. Y. 220; *People* v. *Edelstein*, 91 App. Div. 447; *White* v. *Wagar*, 185 Ill. 195; *State* v. *Walsh*, 43 Minn. 444; *Bucher* v. *Commonwealth*, 103 Penn. St. 528.) The ordinance in so far as it purports to vest in the fire commissioner discretionary power to order such means of preventing and extinguishing fire as he may deem necessary is void because it violates the constitutional provisions guaranteeing to all citizens the equal protection of the laws; it unjustly discriminates between persons coming within the same class; it delegates to the fire commissioner the legislative functions of the board of aldermen. (U. S. Const. art. 14, § 1; N. Y. State Const. art. 1, § 7; *Yick Yo* v. *Hopkins*, 118 U. S. 356; *Noel* v. *People*, 187 Ill. 587; *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9; *City of Baltimore* v. *Radecke*, 49 Md. 217; *Hatch* v. *Reardon*, 184 N Y. 431; *People ex rel. Liebermann* v. *Vandecarr*, 81 App. Div. 128; *Lee* v. *O'Malley*, 69 Misc. Rep. 215; *Buffalo Fertilizer Co.* v. *Town of Cheektowaga*, 61 Misc. Rep. 404; *People ex rel. Anderson* v. *Keeper of Prison, etc.*, 1 Current Ct. Dec. 178; *City of Elkhart* v. *Murray*, 165 Ind. 304; *State* v. *Tenant*, 110 N. C. 609.) Even if the ordinance authorized the order for installation of automatic sprinklers, even if the defendant's constitutional rights were not invaded, still it was not a misdemeanor to disobey the order. (*Matter of O'Keefe*, 19 N. Y. Supp. 676; *Hettenbach* v. *N. Y. C. & H. R. R. R. Co.*, 18 Hun, 129; *Smith* v. *Gouldy*, 58 N. J. L. 562; *Massinger* v. *Milleville*, 63 N. J. L. 123; *Tomlin* v. *Cape May*, 63 N. J. L. 429; *City of New York* v. *Alhambra Theatre Company*, 136 App. Div. 509; *People* v. *Marks*, N. Y. L. J., Feb. 15, 1913.)

*Charles S. Whitman, District Attorney (Alexander C. MacNulty* and *Robert C. Taylor* of counsel), for respondent. Defendant's omission constituted a misdemeanor. (L. 1901, ch. 466, § 773.) The *ejusdem generis* doctrine is not applicable to this case. (*People* v. *Robinson*, 203 N. Y. 380.) Defendant's contention that the ordinance is invalid, in that it denies equal protection and discriminates, and delegates the legislative functions of the aldermen, is untenable. A law is valid even though it invests administrative officers with discretionary powers in the matter of fire prevention. (*Crowley* v. *Christensen*, 137 U. S. 86; *Gundling* v. *Chicago*, 177 U. S. 183; *Nishimura Ekiu* v. *U. S.*, 142 U. S. 651; *Lem Moon Sing* v. *U. S.*, 158 U. S. 538; *Japanese Immigrant Case*, 189 U. S. 86; *Turner* v. *Williams*, 194 U. S. 290; *Chin Bak Kan* v. *U. S.*, 186 U. S. 193; *St. Louis C. C. Co.* v. *Illinois*, 185 U. S. 203; *Jacobson* v. *Massachusetts*, 197 U. S. 27; *Liebermann* v. *Van de Carr*, 199 U. S. 552.) Appellant's contention that his act was not a misdemeanor cannot be upheld. (*Waldo* v. *Christman*, 72 Misc. Rep. 349.)

CUDDEBACK, J. The defendant has been convicted of a misdemeanor for violating an order made by the fire commissioner of the city of New York, which required him (the defendant) to install " a separate and distinct system of automatic sprinklers " upon his premises, used for manufacturing purposes, at Nos. 30-34 West Twenty-sixth street, borough of Manhattan. The order was made under section 775, title 3, chapter 15 of the city charter (L. 1901, ch. 466). Section 775 was added to·the charter by an amendment contained in chapter 899, Laws of 1911. The amendment, among other things, empowered the fire commissioner to

(3) Require, in writing, the installation *as prescribed by any law or ordinance* in any building, structure or inclosure of automatic or other fire alarm system or fire-

extinguishing equipment, and the maintenance and repair thereof, or the construction, as prescribed by any law or ordinance, of adequate and safe means of exit.

*First.·* The defendant's main defense is that there is no *law or ordinance* requiring the installation in any building of automatic sprinklers as called for by the order.

Section 762, title 3, chapter 15 of the charter, as it was in force in 1897 (L. 1897, ch. 378), and as it was continued in force, in the way that will be explained, by the present charter (L. 1901, ch. 466), provided that the owners and proprietors of all manufactories, hotels, tenement houses and other buildings particularly menticned "shall provide such means of communicating alarms of fire, accident or danger, to the police and fire departments, respectively, as the fire commissioner or police board may direct, and shall also provide such fire hose, fire extinguishers, buckets, axes, fire hooks, fire doors and *other means of preventing and extinguishing fires* as said fire commissioner may direct." Section 773 of the same title makes it a misdemeanor not to obey any such direction.

The defendant, applying to these provisions the doctrine of *ejusdem generis,* argues that the words italicized, namely, "other means of preventing and extinguishing fires," include only things of the same kind as fire hose, fire extinguishers, buckets, axes, fire hooks and fire doors. That seems a narrow interpretation of the statute.

It is said in Halsbury's Laws of England (Vol. 27, p. 145), "As a rule, general words following specific words are limited to things *ejusdem generis* with those ·before enumerated, although this, as a rule of construction, must be controlled by another equally general rule, that statutes ought, like wills or other documents, to be construed so as to carry out the objects sought to be accomplished by them."

In Schouler on Wills (3rd ed. § 514) it is said that the rule of *ejusdem generis* "is after all but a rule of presumption as we should bear carefully in mind   *   *   *.

In fine, courts at the present day decline to be hampered by any rule which would sacrifice the testator's true meaning out of undue regard for the association of words of limited scope with broad generic terms."

The court said in *Given* v. *Hilton* (95 U. S. 591, 598), speaking of the rule of *ejusdem generis* : " This rule of construction rests on a mere presumption, easily rebutted by anything that shows the larger subject was in fact in the testator's view."

In *Matter of Robinson* (203 N. Y. 380, 386) the testator gave to his executors and trustees a fund " to provide shelter, necessaries of life, education, general or specific, and *such other financial aid* as may seem to them fitting and proper to such persons as they shall select as being in need of the same." The court said: " In construing the will now under consideration the words ' such other financial aid ' must be read with the words that precede them * * * and as so read, the preceding words not being exhaustive, such comprehensive words should be held to refer to financial aid of the same general character and purpose as that included in such preceding words."

The cases on which the defendant relies are mostly those which involved bequests of property or penal laws enumerating crimes, or were cases where the particular things mentioned were the essential features of the subject-matter before the court. In a bequest, it is his property, and the objects of his bounty, which the donor has in mind, and in penal laws, the principal thing is the definition of crime. But in section 762 of the New York charter, the legislature was not dealing with special reference to the particular articles therein enumerated, viz., fire hose, fire extinguishers, buckets, axes, fire hooks and fire doors. The main object in view was the prevention and extinguishment of fires. That is, perhaps, sufficient to distinguish this case from those cited by the defendant, and to rebut the presumption that the general words of the statute are limited by the particular words preceding them.

But the case is rather within the doctrine of *Matter of Robinson (supra).* The words of section 762, which speak of certain kinds of fire extinguishing apparatus, are not exhaustive, and the comprehensive words "other means of preventing and extinguishing fires" which follow, should be held to include other means of the same general character and purpose as those particularly enumerated. (Ib.) Now, automatic sprinklers, though they may cost a little more than the articles specifically mentioned in the section, are *of the same general character,* and are *intended for the same purpose* as those articles.

This liberal construction has been placed on section 762 in every case where it has come before the courts. It was held by the Appellate Term of the Supreme Court in New York (*Lantry* v. *Hoffman,* 55 Misc. Rep. 261 — 1907) that the section authorized the fire commissioner to require the installation of perforated pipes on and along the ceiling, and connected with a valve outside the building, located above the curb level in a position accessible for the use of the fire department. This decision was affirmed by the Appellate Division (124 App. Div. 937). In *Waldo* v. *Christman* (72 Misc. Rep. 349 — 1911) it was held that section 762 empowered the fire commissioner to require the installation of a separate and distinct system of automatic sprinklers of practically the same character as that required in this case.

The question is asked, why, if section 762 in the charter already included automatic sprinklers, was it deemed necessary to mention them particularly in section 775 of chapter 899, Laws of 1911? A consideration of the act will show that the legislature intended to confirm the construction which the court in the cases cited had theretofore put on section 762, and authorized the city to extend the requirements of the section to all buildings.

The act of 1911 added eleven sections (774–778c) to title 3, chapter 15 of the charter. In these sections the legislature brought together in one act many provisions of the

charter relating to the prevention of fire, couching them in general language, and, at times, extending their application. For example, section 762 of the charter (L. 1897, ch. 378), required the owners and proprietors of some fifteen different kinds of buildings mentioned to "provide such means of communicating alarms of fire, accident or danger, to the police and fire departments, respectively, as the fire commissioner or police board may direct." Subdivision 3, section 775, added by the act of 1911, empowered the fire commissioner to require " the installation, as prescribed by any law or ordinance, in any building, structure or enclosure of automatic or other fire-alarm system." The only effect of this provision in subdivision 3 was to empower the city to require that all buildings, structures and inclosures, not merely those mentioned in section 762, be provided with fire alarm systems. Space will not admit of further comparisons, but it will be found that other subdivisions of section ·775 empower the city to extend pre-existing requirements of the charter, which were limited the same as those relating to fire alarm systems, to all buildings, structures and inclosures. I believe it was the intention of the legislature, in like manner, to authorize the extension of the provisions of section 762, relating to the installation of fire extinguishing apparatus, as those provisions had been interpreted by the court, to all buildings, structures and inclosures.

This construction of chapter 899, Laws of 1911, is supported by other provisions found therein. The act amended the heading of title 3 of chapter 15 (in a manner not now important), and for some reason expressly repeated the headings without including the text of the sections (760–773) in title 3, which preceded the eleven sections added. This shows that the legislature had those preceding sections in mind, and it must be held that it was aware of and approved the construction which the · court had placed upon section 762. And when, in section

775, the legislature empowered the fire commissioner to require the installation of automatic sprinklers, "as prescribed by any law or ordinance," it knew that a law to that effect, according to the construction placed thereon by the courts, was already in force.

*Second.* The further argument of the defendant is that section 773 of the charter, the section relied upon by the prosecution to make the violation of an order given by the fire commissioner a misdemeanor, does not apply to the case. Section 773 prescribes punishment only for offenses under title 3, chapter 15.

The text of sections 762 and 773 is found only in the old charter of 1897 (Ch. 378). It was incorporated in the new charter of 1901 (Ch. 466) by a provision (section 1620, sub. 3) that such sections, with some others of the old charter, were continued in full force and effect until the board of aldermen should pass ordinances regulating the matters provided for in such sections, and that "upon the passing of any such ordinances regulating the matters provided for in any one of the said sections respectively, such section shall cease to have any force or effect, and the same is and shall be repealed."

After the passage of chapter 899, Laws of 1911, and in January, 1912, the board of aldermen repealed, or undertook to repeal, section 762 and enact in place thereof an ordinance in the same words as that section, except that it regulated in a different way the occupation of the aisles and passageways in places of public amusement, by persons standing therein. The provisions of section 762, so far as they related to the orders of the fire commissioner respecting fire extinguishing apparatus, remained unchanged in the ordinance. The position of the defendant is that by the action of the board of aldermen the requirement respecting such apparatus was taken out of title 3 and consequently that section (773), which is limited to cases arising under the title, is no longer applicable.

However that may be, the defendant is not charged with violating section 762 or any ordinance superseding it. He is charged with violating an order of the fire commissioner made under section 775. Section 775 is in title 3, and the case, therefore, falls precisely within the words of section 773. It is a matter of no importance whether the order given under section 775 was based on a section of title 3, or whether it was based on an ordinance of the board of aldermen. It was in either case an order supported by " law or ordinance." The error into which the defendant falls is that he regards himself as charged with violating an ordinance, whereas, he is in fact charged with violating an order of the fire commissioner.

*Third.* The defendant also argues that the order of the fire commissioner is invalid because the power exercised by him under the charter is legislative in its nature, and legislative power cannot be delegated. The case falls within the line of decisions which hold that authority to determine what ought to be done to protect the public welfare in particular cases as necessity requires, may properly be reposed in public boards and officers. Boards of health and health officers are constituted on that theory, and on the same theory licenses to carry on different kinds of business are granted by designated boards and officers. There are many statutes whereby legislative power is thus delegated and they have never been questioned. The presumption is that such boards and officers will discharge their duties honestly and in accordance with law. (*People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440; 199 U. S. 552.) This case also answers the defendant's objection that there is inequality in the law.

*Fourth.* Where, however, no general rules are enacted, but a subordinate officer is empowered to investigate and determine the fact whether in any particular instance further fire protection is required, the reasonableness of the determination of such officer is open to review by the courts, and the person aggrieved is entitled to show that

the order made was unreasonable, unnecessary and oppressive. (*Fire Department of N. Y.* v. *Gilmour*, 149 N. Y. 453.) Then again, chapter 899, Laws of 1911, itself (§§ 776–777b) provides a way of reviewing the determination of the fire commissioner in any case, *first*, by surveyors, and *secondly*, by the court on a writ of certiorari. The defendant did not resort to this remedy, but defied the order of the commissioner. This argument may also be taken as an answer to the defendant's objection that by the order he is deprived of his property without due process of law.

*Fifth.* The conclusion having been reached that the legislature had power under the Constitution to confer authority upon the fire commissioner to make an order requiring the installation of automatic sprinklers, the further question whether in this particular case the order was reasonable or not was a question of fact. On the trial of the action many witnesses were sworn by both parties as to the condition of the defendant's premises and the reasonableness of the fire commissioner's order that automatic sprinklers be installed thereon. The question was decided against the defendant by the Court of Special Sessions, and that decision has been unanimously affirmed by the Appellate Division. It is not, therefore, subject to review in this court.

I recommend that the judgment of conviction appealed from be affirmed.

HOGAN, J. (dissenting). The authority of the legislature in the exercise of the police power to require owners of buildings to make any improvement essential to the protection of the lives of individuals employed therein is well established, and the wisdom of such legislation cannot be seriously questioned.

In this case we are concerned only with the provisions of the act of the legislature found in the charter of the

27

city of New York, and the ordinances of the city adopted pursuant to such legislation.

The order in this proceeding, for a violation of which defendant has been convicted of a penal offense, purported to have been made under subdivision 3 of section 775 of the charter as amended by chapter 899, Laws of 1911, which empowered the fire commissioner to:

"(3) Require, in writing, the installation, *as prescribed by any law or ordinance*, in any building, structure or enclosure of automatic or other fire alarm system or fire extinguishing equipment and the maintenance and repair thereof, or the construction, as prescribed by any law or ordinance, of adequate and safe means of exit."

The authority thus conferred upon the fire commissioner by the section quoted was not unlimited in scope, but merely authorized him to require compliance by the owner of the building with the terms of *any law or ordinance*, which provided:

(1) The installation of a fire alarm system;

(2) A fire extinguishing equipment and the maintenance and repair thereof;

(3) The construction as prescribed by any law or ordinance of adequate and safe means of exit.

The order of the commissioner required defendant to install an automatic sprinkler system in his building.

The authority of the commissioner must be justified, if at all, upon the existence of *a law or ordinance* authorizing him to require the installation of a fire extinguishing equipment.

An examination of the charter of the city of New York discloses that section 762 (Laws of 1897, chapter 378) was entitled "Lights, precautions against fire and use of aisles in places of amusement." The section provided first with reference to protection by globes of glass covering up lights, and then followed:

"The owners and proprietors of all manufactories, hotels, tenement houses, apartment houses, office build-

ings, boarding and lodging houses, warehouses, stores and offices, theatres and music halls   *   *   *   hospitals and asylums, and of the public schools and other public buildings, churches and other places where large numbers of persons are congregated for purposes of worship, instruction or amusement shall provide such means of communicating alarms of fire, accident or danger, to the police and fire departments, respectively, as the fire commissioner or police board may direct, and shall *also provide such fire hose, fire extinguishers, buckets, axes, fire hooks, fire doors and other means of preventing and extinguishing fires as said fire commissioner may direct."*

A willful neglect or refusal to comply with the provisions of the sections quoted was by section 773 of the charter made a misdemeanor.

Immediately after the enactment of subdivision 3 of section 775, quoted above, the board of aldermen of the city of New York enacted an ordinance entitled "An ordinance to regulate the use of aisles and passageways in places of amusements (changing section 762 of the Greater New York Charter)." Section 1 provided: "Section 762 of the Greater New York Charter *is hereby repealed* and the following ordinance enacted in lieu thereof." Then follow the provisions of section 762 with additions thereto having reference only to places of amusement.

It is unnecessary to devote time to a discussion of the lack of power in the board of aldermen of the city of New York to repeal an act of the legislature of the state. For the purposes of this appeal we may consider section 762 of the charter and the ordinances referred to in full force and effect and by the application to them of well-established principles of law the conclusion follows that the *law or ordinances* did not empower the fire commissioner to require the installation of an automatic fire sprinkler system in the premises of defendant.

An examination of section 762 and ordinances discloses the persons against whom the same is directed, namely, the owners and proprietors of the buildings specified in said section and ordinances. It is argued, and was so determined by the Appellate Division, that the words " and other means of preventing and extinguishing fires as said fire commissioner may direct" were sufficient to justify the order made by the fire commissioner in this case. That conclusion seems to me inconsistent with the decision of *Lantry* v. *Mede* (127 App. Div. 557; affd. by this court, 194 N. Y. 544).

A rule common to the construction of statutes, that where two or more words of analogous meaning are coupled together they are presumed to be used in their cognate sense, express the same relations, and give color and expression to each other, must be applied to the statute and ordinance under consideration; therefore, the language quoted which is general in its terms must be limited by the more specific language preceding the same and with which it is associated, and held only to comprehend " *means* " of a character such as the words preceding specified.

To give to the section and ordinances the construction claimed for, would authorize the fire commissioner to require the installation of any "means" specified by him for extinguishing fires in the buildings specified in the section, including churches, stores, offices, boarding houses, lodging houses, and all other buildings referred to in the section, and would confer upon the fire commissioner unlimited power as to the character of the means for preventing or extinguishing fires. He might, in his discretion, require an automatic sprinkling system in every church, boarding house and building described in the section. He might require that certain of the churches and buildings specified should maintain a fire steamer for the purpose of extinguishing fires if the language used is to be given the broad construction claimed for it. He

might to-day require the installation of an automatic sprinkler system at large expense and one year later condemn it and order an improved system installed. The words "and other means of preventing and extinguishing fires as said fire commissioner may direct" must be read in connection with the words preceding, "fire hose, fire extinguishers, buckets, axes, fire hooks," etc., and held to be limited to such means as the specified means preceding the language used in the section imply, (Lewis' Sutherland's St. Const. [2d ed.] vol. 2, p. 814; *Burks v. Bosso,* 180 N. Y. 341; *Matter of Robinson,* 203 N. Y. 380, 386, and cases cited.)

The order and judgment should be reversed.

WERNER, CHASE and MILLER, JJ., concur with CUDDEBACK, J.; WILLARD BARTLETT, Ch. J., and COLLIN, J., concur with HOGAN, J.

Judgment of conviction affirmed.